IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORDAN STRASSMAN,** *Trustee of the Robert H. Strassman Revocable Trust and in his individual capacity;* **THE ROBERT H. STRASSMAN REVOCABLE TRUST** | : : : : : : | Civil No. 1: 18-cv-746 |
| Plaintiffs, | : : | |
| v. | : | |
| **ESSENTIAL IMAGES,** *trading as* **ESSENTIAL IMAGES FINE ART AND ANTIQUE APPRAISAL SERVICE; JOHN W. ROCKAFELLOW; SALLY ROCKAFELLOW,** | : : : : : : : | |
| Defendants. | : | Judge Sylvia H. Rambo |

# **M E M O R A N D U M**

Presently before the court is Essential Images, John W. Rockafellow, and Sally Rockafellow's ("Defendants")[1] motion to dismiss certain claims raised by Jordan Strassman in his individual capacity ("Plaintiff Strassman") and the Robert H. Strassman Revocable Trust ("Trust," collectively, "Plaintiffs"). For the reasons that follow, the court will dismiss Plaintiffs' duplicative claims couched as separate claims under multiple states' laws, but will deny Defendants' motion to the extent is seeks dismissal of Plaintiff Strassman in his individual capacity.

---

[1] For ease of reference, where either of the individual Defendants or a representative of Defendant Essential Images is alleged to be acting on behalf of Defendant Essential Images, the court will refer to such individuals simply as "Defendants" unless otherwise required.

## I. **Background**

Plaintiffs first attempted to bring suit against Defendants by filing a complaint in the New Jersey Superior Court at *Jordan Strassman as Trustee, et al. v. Essential Images, et al.*, Docket No. UNNL-2113-16 (N.J. Super. Ct. Jun. 27, 2016) ("New Jersey Complaint"). Defendants filed a motion to dismiss the New Jersey Complaint for lack of personal jurisdiction over the Trust. On September 30, 2016, the New Jersey Superior Court dismissed the Trust's claims with prejudice. The New Jersey Superior Court also dismissed Plaintiff Strassman's individual claims without prejudice, and, in doing so, granted him leave to replead claims he may have as an individual distinct from the claims of the Trust.

Plaintiffs filed the instant complaint in the United States District Court for the District of New Jersey on June 12, 2017. In their complaint, Plaintiffs allege that Plaintiff Strassman is a New Jersey resident and sole trustee of the Trust, which is situated in Virginia. (Doc. 1, ¶¶ 9, 10.) Strassman contacted Defendants[2] on behalf of the Trust to enter into a contract to sell certain pieces of art and antiques. (*Id.* ¶¶ 11, 22-23.) On October 8, 2012, Defendants travelled to Virginia to appraise the property and offer estimates for sale prices. (*Id.* at 24.) On October 23, 2012, Plaintiff Strassman, on behalf of the Trust, entered into a contract with

---

[2] The complaint alleges that the Rockafellow Defendants are Pennsylvania residents and that Defendant Essential Images is based in both Littlestown, Pennsylvania and Washington, D.C. (Doc. 1, ¶¶ 11-13.)

2

Defendants for the appraisal and sale of Trust property (the "Contract"). (*Id.* at 24-25.) Pursuant to the Contract, Defendants would sell the property in return for a twenty-percent commission and would send all proceeds to the trust along with accountings of sales and inventory within ten days of any sale. (*Id.* at 27.) Any items not sold within 120 days of the date of the agreement would be returned to the Trust within seven days thereafter. (*Id.*) Defendants took items from Virginia to Pennsylvania and Washington D.C. and allegedly sold them and gave an accounting of the sales and profits to the Trust. (*Id.* at 33-34, 37.) Apparently believing the transaction on behalf of the Trust to be a success, Strassman contacted Defendants with a proposal to sell personal property in the same manner. (*Id.* at 35-36.) In December 2012, Defendants travelled to New Jersey to appraise property owned by Plaintiff Strassman and his parents. (*Id.* at 36.) Plaintiff Strassman allegedly inquired whether a new contract would need to be drafted between himself and Defendants, but, according to the complaint, Defendants represented to Plaintiff Strassman that he was covered by the Contract because he "signed it personally." (*Id.*) Over the next nine months, Defendants purportedly sold and attempted to sell property owned by Plaintiffs, but did not provide proper accountings or remit payments for sold items. (*Id.* at 39-42.) When questioned on the phone, Defendants represented that items were likely to be sold and checks were forthcoming. (*Id.* at 43.) Eventually, Plaintiffs sent a written demand to

Defendants. (*Id.* at 44.) Defendants again responded by indicating that items were likely to be sold soon and checks would be sent in the coming weeks. It is unclear if further attempts were made between September 2013 and the date the New Jersey Action was filed on June 2, 2016; however, there is no indication that Plaintiffs ever received any payments or an accounting of sold items.

> In the complaint, Plaintiffs allege the following claims:
>
> Under New Jersey law, plaintiffs allege violations of the New Jersey Consumer Fraud Act, breach of contract, violation of good faith and fair dealing, misrepresentation, common law fraud, promissory estoppel, conversion, breach of quasi-contract, breach of fiduciary duty, conspiracy to commit a tort, and aiding the commission of a tort. ([Doc. 1,] ¶¶ 48-98). Under Pennsylvania law, plaintiffs allege violations of the Pennsylvania Unfair Trade Practice and Consumer Protection Law, breach of contract, unjust enrichment, breach of fiduciary duty, common law fraud, conversion, and conspiracy. ([Doc. 1,] ¶¶ 99-127). Under Virginia law, plaintiffs allege violations of the Virginia Consumer Protection Act, breach of contract, common law fraud, negligent misrepresentation, conversion, and breach of quasi-contract. ([Doc. 1,] ¶¶ 128-155). Under Washington, D.C. law, plaintiffs allege breach of contract, violation of good faith and fair dealing, negligent misrepresentation, common law fraud, unjust enrichment, breach of fiduciary duty, and violations of the [D.C.] Consumer Protection Procedures Act. ([Doc. 1,] ¶¶ 156-88).

*Strassman*, Docket No. UNNL-2113-16, *5-6. On September 13, 2017, Defendants filed a motion to dismiss, arguing that the collateral estoppel doctrine precluded relitigating the personal jurisdiction issue raised in the New Jersey Superior Court. (Doc. 8.) The New Jersey District Court agreed, but instead of dismissing the suit, transferred it to this court. (Doc. 15, pp. 16-17 ("Therefore,

4

since it appears that the action could have been filed in Pennsylvania in the first instance, and that a transfer would be in the interest of justice, this action will be transferred to the Middle District of Pennsylvania."); Doc. 16.) Following the transfer, Defendants filed the instant motion to dismiss on April 9, 2018, arguing that Plaintiff Strassman failed to adequately plead any claims in his individual capacity rather than as a trustee, and that several of Plaintiffs' state law claims were duplicative. The motion has been fully briefed and is ripe for disposition.

## II. **Legal Standard**

In disposing of a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). The court generally should consider only the allegations in the complaint, including "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Under Rule 12(b)(6), the claims should be dismissed if they fail to meet the pleading requirements set forth in Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a 12(b)(6) motion, a plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A complaint must allege more than facts that are "merely consistent with a defendant's liability" and must cross over "the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted).

Under the two-pronged *Twombly-Iqbal* approach, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the . . . complaint—the well-pleaded,

nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.* However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8(a)(2) "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

### III. Discussion

#### a. *Jurisdiction*

As a preliminary matter, the court must determine if it has subject matter jurisdiction over the claims raised by Plaintiffs. It is well-settled that Federal courts have the "'obligation to address a question of subject matter jurisdiction *sua sponte.*'" *Generational Equity LLC v. Schomaker*, 602 Fed. App'x 560, 561 (3d Cir. 2015) (quoting *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F. 3d 214, 217 (3d Cir. 1999), abrogated on other grounds by *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)). Plaintiffs assert that this court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Under the dictates of 28 U.S.C. § 1332(a), for diversity jurisdiction to exist, "no plaintiff [may] be a citizen of the same state as any defendant[,]" and the amount in controversy must exceed $75,000. *Zambelli*

*Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). The formerly straightforward issue of diversity jurisdiction involving trusts has become a thorny question in recent years.

In *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980), the Court held that, when a trustee sues or is sued on behalf of a trust, the citizenship of the trust is based on that of the trustees alone. *Id.* at 465-66. In *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), the Court held that, when an artificial legal entity besides a corporation sues or is sued, diversity is determined by looking to the citizenship of the entity's members. In so holding, the *Carden* Court declined to extend its reasoning from *Navarro*, reasoning that "*Navarro* had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names." *Id.* at 192-93. The Supreme Court expounded on *Carden* and *Navarro* in *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016). The Court attempted to resolve confusion concerning jurisdiction over a "trust," construed as a fiduciary relationship, and a modern type of business entity, styled as a "trust" in many states:

> The confusion can be explained, perhaps, by tradition. Traditionally, a trust was not considered a distinct legal entity, but a "fiduciary relationship" between multiple people. *Klein v. Bryer*, [] 177 A.2d 412, 413 (1962); Restatement (Second) of Trusts § 2 (1957). Such a relationship was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name. *Glenn v. Allison*, 58 Md. 527, 529 (1882); Deveaux, 5 Cranch, at 91.

8

> . . .
> Many States, however, have applied the "trust" label to a variety of unincorporated entities that have little in common with this traditional template.

*Americold*, 136 S. Ct. at 1016. Recently, the Third Circuit distilled these precedents into a jurisdictional test specific to trusts. *GBForefront, L.P. v. Forefront Mgmt. Grp.*, LLC, 888 F.3d 29, 39 (3d Cir. 2018) ("[B]ecause a business trust is an artificial legal entity and a traditional trust is not, the citizenship of a traditional trust must be determined differently than that of a business trust."). Here, because the complaint does not set forth the identities and citizenship of the trust beneficiaries, the court could not determine jurisdiction at this stage were it to find that the Trust is a "business" trust. Although the complaint does not set forth which type of trust the Trust is designated, for the foregoing reasons, the court is satisfied that the Trust qualifies as a traditional trust.

In order to determine whether a party is a business or traditional trust, the court must first look to the state law where the trust was created. *GBForefront, L.P.*, 888 F.3d at 40-41. Plaintiff Trust was created in the Commonwealth of Virginia. (Doc. 1, ¶ 10.) Virginia law differentiates between traditional trusts and business trusts. *Compare* VA Code Ann. § 64.2-700 (Uniform Trust Code) *with* VA Code Ann. § 13.1-1200 (Virginia Business Trust Act). Virginia law specifically incorporates the common law of trusts, which states that a traditional trust "is not a legal entity . . . capable of legal action on its own behalf."

Restatement (Second) of Trusts § 2 (1957); *see* VA Code Ann. § 64.2-704 (providing for "common law of trusts" to "supplement this chapter"). The common law tasks the trustee with bringing suit on behalf of a trust. *See* Restatement (Second) of Trusts § 177 cmt. a ("If a third person commits a tort with respect to the trust property, it is the duty of the trustee to take reasonable steps to compel him to redress the tort."); *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 730 (2d Cir. 2017). Nothing in the Virginia Uniform Trust Code abrogates or contradicts the common law rule that a trustee must bring suit on behalf of the trust, excepting beneficiary actions where the trustee fails to fulfil its fiduciary role. *See Burton v. Dolph*, 89 Va. Cir. 101 (2014) ("Although the [Virginia Supreme] Court [of Appeals] held that only the trustee could bring suit against the third party, it qualified its holding, explaining that while the trustee was the proper party to bring the action at law, the beneficiary could maintain the lawsuit in a court of equity.") (*citing Poage v. Bell*, 35 Va. 604, 607 (1837)). In contrast, a "business trust" created under the Virginia Business Act "has the same powers as an individual or any other entity to do all things necessary or convenient to carry out its business and affairs, including, without limitation, the power [t]o sue and be sued, complain and defend in its name." Va. Code Ann. § 13.1-1210. Moreover, a business trust is required to register with the State Corporation Commission of Virginia. Va. Code Ann. § 13.1-1201–1203. A search of the

10

public records registering all business trusts in the Commonwealth of Virginia does not indicate the Plaintiff Trust is a registered "business entity." Accordingly, the court has sufficiently established that the Trust is a traditional trust, and the court need only inquire as to the identity of its trustee in order to determine if jurisdiction is proper. Because Individual Plaintiff is a citizen of Pennsylvania and Defendants are citizens of New Jersey and Washington D.C., complete diversity exists and the court may exercise jurisdiction pursuant to 28 U.S.C. § 1332.

### b. *Plaintiff Strassman's individual claims*

The above discussion regarding jurisdiction informs this court's analysis of Defendants' argument that Plaintiff Strassman failed to allege any claims in his individual capacity. It is well-settled that a traditional trust cannot bring suit in its own name because the trust represents a formal fiduciary relationship as opposed to a business entity. *See Juniata Terminal Co. Inc. v. Gifis*, No. 16-cv-5369, 2018 WL 4148467, *7 (D.N.J. Aug. 30, 2018); *see also Mandelbrot v. Armstrong World Indus. Asbestos Pers. Injury Settlement Tr.*, 618 F. App'x. 57, 58 (3d Cir 2015) (citing *In re 1031 Tax Grp., LLC*, 439 B.R. 47, 64-65 (Bankr. S.D.N.Y. 2010) ("describing "bedrock rule" that "only the beneficiary or trustee of an express trust has standing to sue to establish and enforce the trust"); Restatement (Second) of Trusts §§ 2, 177. It appears from the pleadings that Plaintiff Strassman is the sole trustee of the Trust. Thus, excepting actions brought by beneficiaries in equity,

11

Plaintiff Strassman in his capacity as trustee would be required to bring any suits on behalf of the Trust. His status as trustee does not automatically grant him a right to sue as an individual for harm done to the Trust. In this case, however, Plaintiff Strassman alleges that he gave his own personal property to Defendants to sell, pursuant to a contract between Defendants and the Trust. (Doc. 1, ¶¶ 35-36.) The court's inquiry therefore, is whether those allegations are sufficient to sustain the claims brought in his individual capacity.

Relevantly, Plaintiff Strassman alleges that Defendants offered to appraise and consign several items on his behalf. When discussing arrangements to do so, Defendants represented that a new contract was not required because any items sold on behalf of Plaintiff Strassman would be covered by the existing contract. (Doc. 1, ¶ 36.) Rather than address how these allegations fail to meet particular elements of the thirty counts raised by Plaintiffs, Defendants simply suggest that Plaintiffs have set forth no facts that would entitle Plaintiff Strassman to relief in his individual capacity. Although the allegations set forth above demonstrate that no formal written contract between Plaintiff Strassman and Defendants exists, he does allege that Defendants essentially defrauded him into believing a consignment agreement existed and absconded with his property under the guise of selling it on his behalf.

The instant case raises the opposite scenario to claims typically challenged by 12(b)(6) motions. Typically, a defendant objects that a plaintiff alleged legally conclusory statements without sufficient factual support. Here, the factual support for Plaintiff Strassman's claims appears to be included in the complaint—*e.g.* Defendants used a ruse to acquire his property and never returned it—but the complaint generally fails to tie these disparate allegations into specific legally cognizable claims. Instead, the complaint seems to assert valid claims on behalf of the Trust and attempts to incorporate Plaintiff Strassman's individual claims into those causes of action. At this stage of the pleadings, the court is constrained to find that the factual allegations that Plaintiff Strassman gave some of his own property to Defendants to sell for his own benefit and potentially either amended the Contract or entered into an oral agreement on the same terms of the Contract, could support individual claims by Plaintiff Strassman. Defendants do not challenge the particular application of these facts to any cause of action raised by Plaintiff, nor has either party briefed whether the facts alleged with respect to Plaintiff Strassman's personal property satisfies the Rule 8 pleading standard, or the Rule 9 standard in the case of Plaintiffs' fraud claims. *See Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, (2014) ("[The Federal Rules of Civil Procedure] do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.") (citing 2A C. Wright, A. Miller, M. Kane,

R. Marcus, and A. Steinman, Federal Practice and Procedure, p. 644 (2014 ed.) (Federal Rules of Civil Procedure "are designed to discourage battles over mere form of statement")). Accordingly, this court will not raise those challenges *sua sponte*. At this juncture, the court finds only that Plaintiff Strassman has asserted some factual basis to support the various claims asserted both as an individual and on behalf of the Trust. Although Defendants move this court to dismiss Plaintiff Strassman's claims, arguing that he raised no facts that would give rise to claims alleged in his individual capacity, Plaintiff Strassman, however inartfully, did just that. The Federal Rules discourage dismissal for failure to adhere to formalities of pleading. Thus, this court will not dismiss Plaintiff Strassman's claims merely because they are difficult to parse and, therefore, will deny Defendants' motion to dismiss.

      *c.*    <u>*Duplicative state law claims*</u>

Defendants argue that the court should strike from the complaint duplicative claims raised by Plaintiffs under the laws of multiple states. Specifically, Defendants allege the following counts are duplicative:

> Counts 2, 12,[3] 19, 24 – Breach of contract under the laws of New Jersey, Pennsylvania, Virginia, and Washington D.C.

---

[3] Plaintiffs appear to have erroneously set forth two "Twelfth Counts" in the complaint. (Doc. 1, pp. 30-31.) Unless otherwise noted, references to Count 12 relate to Plaintiffs' Pennsylvania breach of contract claim. After the second "Twelfth Count," the complaint resumes numbering

> Counts 3, 21, 26 – Misrepresentation under the laws of New Jersey, Virginia, and Washington D.C.
>
> Counts 5, 15, 20, 27 – Fraud under the laws of New Jersey, Pennsylvania, Virginia, and Washington D.C.
>
> Counts 7, 16, 22 – Conversion under the laws of New Jersey, Pennsylvania, and Virginia.
>
> Counts 8, 13, 23, 28 – Quasi-contract claims under the laws of New Jersey, Pennsylvania, Virginia, and Washington D.C.
>
> Counts 9, 14, 29 – Breach of fiduciary duty under the laws of New Jersey, Pennsylvania, Virginia, and Washington D.C.
>
> Counts 10, 17 – Conspiracy under the laws of New Jersey and Pennsylvania.

In support of this argument, Defendants cite *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588 (E.D. Pa. 2010). *Brown* does describe the court's inherent authority to dismiss claims as duplicative, but in a slightly different context than the case *sub judice*. The court in *Brown* described the Pennsylvania "gist of the action" doctrine, which prohibits a plaintiff from raising claims under theories of tort and breach of contract where the same underlying act gave rise to both claims. "The doctrine, however, forecloses a party's pursuit of a tort action for the mere breach of contractual duties, 'without any separate or independent event giving rise to the tort.'" *Id.* at 619 (quoting *Smith v. Lincoln Benefit Life Co.*, No. 08-cv-1324, 2009 WL 789900, *20 (W.D. Pa. Mar. 23, 2009)); *Air Prods. and Chems., Inc. v. Eaton*

---

with the "Thirteenth Count." The court will otherwise use the numbering set forth in the complaint.

*Metal Prods. Co.*, 256 F. Supp. 2d 329, 340 (E.D. Pa. 2003)), *aff'd*, 395 Fed. App'x 821, (3d Cir. 2010)); *see also Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 499 (E.D. Pa. 2008) (holding that a breach of fiduciary duty could be dismissed as duplicative of a breach of contract claim where the fiduciary duty arose solely from contractual obligations); *InSyte Med. Techs., Inc. v. Lighthouse Imaging, LLC*, No. 13-cv-1375, 2014 WL 958886, *7 (E.D. Pa. Mar. 11, 2014) (applying gist of action doctrine in diversity case).[4]  Despite the distinction between the types of claims found to be duplicative in *Brown*, the reasoning set forth therein supports this court's conclusion that Plaintiffs' various claims asserted under the laws of multiple states should be dismissed.

The claims asserted by Plaintiff, without reference to the facts alleged, could give rise to the assumption that multiple contracts of a similar nature were breached in multiple jurisdictions over time.  The court need not reach the issue of whether that factual scenario would allow Plaintiffs to properly assert multiple counts under multiple state laws for each individual breach because that is not the factual scenario Plaintiffs have alleged.  Plaintiffs have essentially alleged only one act giving rise to the various causes of actions raised in the complaint: Defendants failed to remit payment and accountings for sold and unsold goods.  A different

---

[4] Defendants do not argue that any of the different causes of action are duplicative, *i.e.* that Plaintiffs' breach of fiduciary duty claim is duplicative of their breach of contract claim.  Thus, the court does not reach those issues.  At least in Plaintiff Strassman's case, this issue may turn on whether a contractual relationship actually exists.  Defendants are not precluded from raising these arguments at the summary judgment stage or pursuant to Rule 12(c).  *See* Rule 12(h)(2)(B).

cause of action would not arise every time an item was picked up or sold; rather, the court must undertake a choice-of-law analysis to determine what substantive law applies. This analysis begins by determining whether there are any material differences between the relevant laws that could be applied; if so, the court will decide the most appropriate law based on "which state has the greater interest in the application of its law." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229 (3d Cir. 2007).[5] The choice of law analysis is meant to prevent plaintiffs from simply litigating their claims under the laws of multiple states in the hope that the application of one of those laws will result in a favorable outcome, yet that seems to be precisely what Plaintiffs are attempting to do here. Plaintiffs are precluded from raising the exact same causes of action as separate counts simply because it is unclear which law would apply. Accordingly, Plaintiffs' claims will be dismissed to the extent they are duplicative.[6]

---

[5] The Supreme Court decided long ago in *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020 (1941) that a federal court sitting in diversity, where the case presents multistate law aspects, must apply the choice-of-law doctrine of the forum state unless the case was transferred from a federal court under 28 U.S.C. § 1404(a) for the convenience of parties or in the interests of justice. *See Van Dusen v. Barrack*, 376 U.S. 612 (1964). If a transfer was made pursuant to Section 1404(a), the federal court in the transferee state must consider the forum to be the transferor state, for purposes of applying choice-of-law rules. *Id.*; *see also* 1 American Law of Torts § 2:1.

[6] Plaintiffs request that this court "consolidate" the claims raised rather than dismiss them, but does not assert a Rule or other mechanism by which the court may essentially rewrite a plaintiff's pleading. The essential claims in counts 2, 3, 5, 7, 8, 9, and 10 shall be preserved, and Plaintiffs may argue at a later stage which state's law applies to the causes of action raised. Alternatively, this court would entertain Plaintiffs' request to file an amended complaint

## IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss will be denied to the extent is seeks to dismiss Plaintiff Strassman's individual claims, but will be granted to the extent it seeks to dismiss Plaintiffs' duplicative claims raised under the laws of multiple states. An appropriate order will follow.

                                                     s/Sylvia H. Rambo
                                                    SYLVIA H. RAMBO
                                                    United States District Judge

Dated: November 1, 2018

---

pursuant to Rule 15(a)(2) in an effort to clarify which causes of action will be raised and which causes of action Plaintiffs intend to allege on behalf of Plaintiff Strassman or the Trust.